UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

KEVIN DUNSTON,

               Petitioner,

    v.

WARDEN,

               Respondent.

Case No. 2:20-cv-05665-SHK

**ORDER DENYING SECOND AMENDED PETITION AND DISMISSING CASE WITH PREJUDICE**

Pending before the Court is Petitioner's Second Amended Petition for Writ of Habeas Corpus ("Second Amended Petition" or "SAP"), filed pursuant to 28 U.S.C. § 2254, challenging his 2018 California state court conviction of two counts of second-degree robbery. Both Petitioner and Respondent have consented to proceed before a United States Magistrate Judge. Electronic Case Filing Number ("ECF No.") 22, 25. Because Petitioner has failed to demonstrate that the California state courts unreasonably denied the claims raised in the SAP and because Ground 3(c) is procedurally defaulted, the undersigned Magistrate Judge DENIES Petitioner's request for habeas relief on the merits, in its entirety, and ORDERS the action dismissed with prejudice.

/ / /

/ / /

# I.   PROCEDURAL HISTORY

In December 2018, Petitioner was convicted in Los Angeles County Superior Court of two counts of second-degree robbery.  ECF No. 28-1, Clerk's Transcript ("CT") at 95.[1]  The trial court sentenced Petitioner to five years in state prison.  Id. at 128-133.

Petitioner filed a direct appeal to the California Court of Appeal raising the Third Ground, and subparts (c), (d), and (e) of the Fourth Ground alleged in the Second Amended Petition.  ECF No. 28-7, Appellant's Opening Brief ("AOB").  The California Court of Appeal affirmed the judgment in its entirety.  ECF No. 8-1.  Petitioner's ensuing Petition for Review to the California Supreme Court, raising the same claims, was denied on May 13, 2020.  ECF Nos. 8-2, 8-3.  During these federal proceedings, Petitioner filed a habeas petition in the California Supreme Court raising claims generally corresponding to the first, second, fourth, and fifth claims raised in the SAP.  ECF No. 28-10.  The California Supreme Court summarily denied the Petition without comment or citation of authority on March 24, 2021.  ECF No. 28-11.

On June 25, 2020, Petitioner filed a Petition for Writ of Habeas Corpus ("Petition") in this Court, pursuant to 28 U.S.C. § 2254.  ECF No. 1.  Respondent filed a Motion to Dismiss the Petition on the grounds that only Grounds Three and Four, subclaim (d) had been exhausted.  ECF No. 7.  Petitioner thereafter filed an Opposition to the Motion to Dismiss.  ECF No. 9.  On January 11, 2021, the Court issued an Order to Show Cause ("OSC") why the Petition should not be dismissed as a mixed petition.  ECF No. 13.  In the OSC, Petitioner was given the option to show that Grounds One, Two, Four, and Five (in their entirety) were exhausted; to

---

[1] The referenced page number for the state court records, filings, and opinions lodged by Respondent will be the number assigned in those documents and not the page number associated with the document through the ECF system.  With respect to Petitioner's filings, including the Petition and Traverse, the referenced page numbers will be those assigned by the Court's ECF system.

proceed only on the exhausted grounds: Ground Three, and subclaims (c), (d), and (e) of Ground Four; or to request a stay under Rhines v. Weber, 544 U.S. 269 (2005) or Kelly v. Small, 315 F.3d 1063 (9th Cir. 2003).  Id.

Petitioner filed a motion to stay under Rhines, or alternatively, under Kelly, along with a First Amended Petition for Writ of Habeas Corpus.  ECF No. 14.  The Court then issued an Order denying Respondent's motion to dismiss as moot, denying Petitioner's request for a stay under Rhines, and granting Petitioner's request for a stay under Kelly.  ECF No. 16.  On April 9, 2021, Petitioner filed a motion seeking leave to file a Second Amended Petition after all grounds contained in the original petition had been denied by the California Supreme Court.  ECF No. 17.  Concurrently therewith, Petitioner filed a Second Amended Petition, which is the operative petition in this matter.  ECF No. 18.  The Court granted Petitioner's motion, filed the SAP, and ordered the stay in the action lifted in an Order issued on April 29, 2021.  ECF No. 19.  In a separate order issued the same day, the Court ordered Respondent to file a response to the SAP.  ECF No. 20.  Following an extension of time, Respondent filed an Answer ("Answer") to the SAP, along with a supporting Memorandum of Points and Authorities ("Answer Mem.") on August 12, 2021.  ECF No. 27.  Petitioner filed a Traverse on September 7, 2021.  ECF No. 32.  Petitioner's subsequent motion for the appointment of counsel, ECF No. 33, was denied in a minute order issued on September 16, 2021.  ECF No. 34.

## II.    PETITIONER'S CLAIMS

The Petition raises the following grounds for relief:

1. Petitioner's convictions were obtained in violation of due process because (a) the jury was not asked to clarify which charge Petitioner was convicted of in count 1; (b) the jury was not given the written instruction on the lesser included offense of petty theft; (c) the trial court's instruction on robbery failed to specify Petitioner's culpability for the

crime; and (d) Petitioner was actually convicted of second-degree robbery under Cal. Penal Code § 212.5.

2.  Petitioner was denied a fair trial because (a) counsel was not given adequate time to prepare for trial; (b) the trial court improperly held a lengthy conversation involving evidentiary issues in front of victim Emily Sanchez; and (c) the judge failed to rule on a moral turpitude issue involving the victim in count 2, Enrique Enriquez.

3.  The prosecutor committed error in closing argument by: (a) misstating testimony or evidence; (b) impugning defense counsel's integrity; and (c) appealing to the passion and sympathy of the jury.

4.  Defense counsel was ineffective for failing to: (a) move for dismissal based on constitutional violations raised during trial; (b) request an instruction on the subjective and objective components of robbery; (c) preserve an instructional error claim; (d) object to prosecutorial errors; (e) request a continuance to prepare for trial; (f) properly argue a writ of mandamus/motion to recuse; (g) argue Petitioner's ability to pay fines and fees at the sentencing hearing; and (h) request a curative instruction after the trial court had a lengthy conversation in front of victim Sanchez.

5.  The trial court improperly denied Petitioner's <u>Marsden</u> motion.

6.  Petitioner's due process rights were violated when the California Court of Appeal made certain findings on direct appeal.

ECF No. 18, SAP at 5-10; ECF No. 18-1, Attachment to Petition ("Pet. Att."). Respondent argues that subclaims (b) and (c) of Ground Four are procedurally barred; that Ground Five and subclaim (g) of Ground Four are not cognizable; and that the state court's denial of all claims was neither contrary to nor involved an unreasonable application of clearly established Supreme Court law.  ECF No. 27, Answer Mem. at 5-40.

/ / /

### III.   FACTUAL SUMMARY

Because Petitioner has not rebutted the correctness of the findings of fact made by the California Court of Appeal regarding Petitioner's appeal in state court by clear and convincing evidence, the Court adopts the factual summary set forth in the California Court of Appeal's opinion affirming Petitioner's conviction. Tilcock v. Budge, 538 F.3d 1138, 1141 (9th Cir. 2008); 28 U.S.C. § 2254(e)(1). To the extent that an evaluation of Petitioner's claims depends on an examination of the trial record, the Court has made an independent evaluation of the record.

The relevant factual summary, as set out in the California Court of Appeal's Opinion, provides:

> The evidence at trial established that at approximately 7:00 p.m. on September 5, 2018, while working as a cashier at a Smart & Final store in Los Angeles, Emily Sanchez (Sanchez) noticed appellant when he stood near her register and "calmly" said, "I can't find my card." As she was ringing up another customer, Sanchez told appellant she could not help him.  Appellant then reached over with his left hand and took a $100 bill from atop Sanchez's register—she had forgotten to put the bill inside her register.  Sanchez asked for the money back but appellant loudly shouted, repeatedly cursed, and kept saying "fuck this" and "I can't find my card."
>
> Sanchez asked for assistance from her coworkers, Passion (last name unreported) and Enrique Enriquez (Enriquez).  Passion asked appellant to give back the $100 bill, but appellant replied, "No. Fuck that."  He appeared "angry," was "flexing," and kept dropping "F bombs."  Sanchez was afraid for her own safety and for the safety of her coworkers because "[a]nything could have happened within those moments."  Sanchez had never experienced a robbery; she described it as "a scary moment" and "pretty traumatic."  She began to move towards the door and noticed patrons at the store backing away from appellant as well.
>
> Enriquez, a supervisor at Smart & Final, was about to walk out to lunch when he noticed appellant being "loud" and shouting, "I want my fucking card."  Enriquez "tried to calm him down" and told appellant to "return the hundred-dollar bill and maybe we can help you."  But Appellant replied, "Fuck your hundred-dollar bill," and pointed toward the cameras and told Passion and Enriquez to "go look at the cameras so we can find out who took it or where it is."

Both Passion and Enriquez positioned themselves between appellant and the doorway to prevent him from leaving the store with the $100 bill. Appellant was "all over the place" and told Passion to move out of the way; he "g[o]t in front of Passion using his body, trying to make himself seem bigger," kept flexing and trying to show "his macho-ness," and puffed out his chest and shoulders. He was wearing short sleeves and "all his veins and his muscles" were visible.

Enriquez noticed appellant clenching something with a handle that "resembled a hammer," but he was not sure since it was wrapped in a plastic bag. Sanchez also noticed appellant carrying something in his hand; she could not, however, discern what the item was, as it was "wrapped in white."

Passion informed appellant she was calling 911, to which he replied, "Report it. Thank you, I'm staying right here." Passion told the 911 operator appellant was acting "very violent, belligerent." Appellant again repeated, "Find my card. I don't give a fuck about no hundred dollars." Although Passion told him, "That's not how this works," appellant disagreed and replied, "That is how this works."

After Passion ended the call, appellant attempted to leave and Passion and Enriquez attempted to stall him. Enriquez felt like appellant was "sizing [him] up." Appellant "kept moving and moving until he finally got around" Enriquez and Passion. Enriquez did not use any force to keep appellant in the store or hold him down because Enriquez was afraid things would escalate if he did, and he "was not about to risk [himself]." Enriquez was in fear for himself and for his co-workers; he believed appellant would physically harm him if he approached closer. According to Enriquez, appellant's body language seemed like he was "trying to intimidate or scare."

Appellant left the store with the $100 bill. A pickup truck pulled up. Appellant got into the back of the truck and left. The police arrived and arrested appellant "somewhere down the street" from the store. The entire incident had lasted about 10 to 15 minutes.

ECF No. 8-1, California Court of Appeal's Opinion in The People v. Kevin Dunston, Case No. B295178 ("Cal. CoA Op.") at 2-5.

/ / /

/ / /

/ / /

/ / /

6

# IV.   STANDARD OF REVIEW

The standards in the Anti-Terrorism and Effective Death Penalty Act of 1996 (the "AEDPA") and 28 U.S.C. § 2254 govern this Court's review of this SAP.  As a result, and because the California Supreme Court summarily denied Ground Three and subparts (c), (d), and (e) of Ground Four of the SAP, this Court reviews the reasoning of the California Court of Appeal decision as to these claims.  See ECF Nos. 15-13 and 15-17; Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018) (holding "that the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "should then presume that the unexplained decision adopted the same reasoning").  As for Grounds One, Two, Five, and subparts (a), (b), (f), (g), and (h) of Ground Four of the SAP, although there is no reasoned opinion denying these claims, the Court is still required to uphold the California Supreme Court's summary denial so long as there is any reasonable basis in the record to support it.  See Harrington v. Richter, 562 U.S. 86, 102 (2011) (holding that a reviewing court "must determine what arguments or theories supported or . . . could have supported [ ] the state court's decision" and "whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with" existing Supreme Court precedent).

# V.   DISCUSSION

## A.   Habeas Relief Is Not Warranted With Respect to Petitioner's Due Process Claims (Ground One).

In Ground One, Petitioner claims that his right to due process was denied when: (a) the jury was not asked to clarify which charge Petitioner was convicted of in count 1; (b) the jury was not given the written instruction on the lesser included offense of petty theft; (c) the trial court's instruction on robbery failed to specify Petitioner's culpability for the crime; and (d) Petitioner was actually
/ / /

convicted of second-degree robbery under Cal. Penal Code § 212.5.  ECF No. 18, SAP at 5, 7.

### 1.    Ground 1(a): The jury was not asked to clarify which charge Petitioner was convicted of in count 1.

Petitioner contends that the record shows that the jury foreperson, Juror No. 2, signed a verdict form reflecting Petitioner was guilty of the lesser offense of petty theft and that the jury was not asked to clarify whether it was convicting Petitioner of robbery or petty theft.  ECF No. 18, SAP at 5.

The Clerk's Transcript reflects that the jury foreperson signed and dated the verdict forms for "GUILTY of the crime of SECOND DEGREE ROBBERY" for counts 1 and 2.  ECF No. 28-1, CT at 95-96.[2]  On the verdict form for "Guilty of the crime of Petty Theft," "jury #2" is written on the foreperson signature line and the form is dated; there is no signature.  ECF No. 28-1, CT at 97.

After reviewing the verdict forms, the trial court found that the verdict forms appeared to be correctly filled out and asked the clerk to read the verdicts.  ECF No. 28-6, 3 Reporter's Transcript ["RT"] at 699.  The clerk read as follows:

> We, the jury in the above-entitled action, find the [Petitioner], Kevin Dunston, guilty of the crime of second degree robbery, in violation of Penal Code section 211, a felony, as charged in count 1 of the information. [π] Dated December 4, 2018.  Signed jury foreperson, seat number 2. [ . . . ] We, the jury in the above-entitled action, find the [Petitioner], Kevin Dunston, guilty of the crime of second degree robbery in violation of Penal Code section 211, a felony, as charged in count 2 of the information. [π] Dated December 4, 2018.  Signed Jury foreperson, seat number 2.

ECF No. 28-6, 3 RT at 699.  The trial court then polled the jury – asking each member to answer "yes" or "no" to the question "are these your verdicts?"  Id. at 700.  Each member of the jury responded "yes."  Id. at 700-701.

/ / /

---

[2] The foreperson's signature has been "whited out" on the verdict forms, presumably to protect that person's identity.

To be a valid conviction, the Constitution requires that all twelve jurors find that the Government proved each element of the offense beyond a reasonable doubt.  Ramos v. Louisiana, 140 S. Ct. 1390, 1397 (2020).  Here, although the foreperson apparently dated and wrote in "jury #2" on *one* of the petty theft verdict forms, the trial court found that the verdict forms had been filled out correctly.  The verdicts were read out loud, reflecting Petitioner's guilt of two counts of second-degree robbery, and the jurors were polled if those were in fact their verdicts, to which all jurors responded "yes."  Thus, contrary to Petitioner's contention that the jury was not asked to clarify whether it was convicting Petitioner of petty theft or of second-degree robbery, the jury did unanimously confirm its intent to convict Petitioner of second-degree robbery.  Petitioner received all that the Constitution requires and habeas relief is denied on this claim.

### 2.    Ground 1(b): The jury was not given the written instruction on the lesser included offense of petty theft.

Petitioner contends that the jury was verbally instructed on the lesser included offense of "petty theft" but that the instruction was not included with the written instructions provided to the jurors, and that the written instructions that were provided do not explain the culpability required for the crime.  ECF No. 18, SAP at 5.

### a.    The record below

Prior to reading the jury instructions out loud, the trial court passed out individual copies of the instructions to each of the jurors.  ECF No. 28-6, 3 RT at 626-627.  The jurors were advised that they could write their initials on their own copies and would be permitted to take the instructions into the jury room to use.  Id.  Regarding petty theft, the trial court verbally instructed the jury as follows, in pertinent part:

> Petty theft is a lesser included offense of robbery in the second degree.  [. . .]  Every person who steals, takes, carries, leaves or drives away  the  personal  property  of  another,  with  the  specific  intent  to

deprive the owner permanently of his or her property, is guilty of the crime of theft by larceny.  [. . .]

[π]

If you are not satisfied beyond a reasonable doubt that the defendant is guilty of the crime charged, you may nevertheless convict him of any lesser crime if you are convinced beyond a reasonable doubt that the defendant is guilty of the lesser crime.

Id. at 643-644.

The state court record does not contain a complete copy of the written jury instructions.  See ECF No. 28-1, 1 CT at 81-94.  Although Petitioner's counsel on direct appeal moved to augment the state court record with a complete copy of the instructions, ECF No. 28-2, Supplemental CT ("SCT") at 4-5, a deputy clerk for the Los Angeles County Superior Court responded that the deputy clerk had checked the original documents of the jury instructions given in the court file and they are the same documents provided in the Clerk's Transcript on Appeal, ECF No. 28-2, SCT at 3.

b.    Analysis

The record is clear that the jury was verbally instructed on the definition and elements of petty theft.  The record is also clear that the jury was provided with the written form of the instructions that the trial court read.  Indeed, the trial court advised the jury to "turn to page 3 of the jury instructions" as it began reading the instructions out loud.  ECF No. 28-6, 3 RT at 627.  Had the written instructions on petty theft been missing from the written form of the instructions provided, it is unfathomable that no one in the court room would have drawn that to the trial court's attention.  Instead, the record supports the finding that the verbal instructions given to the jury were provided in written form despite their absence from the Clerk's Transcript.

Even if this Court were to find that the written jury instruction on petty theft was omitted from the instructions provided to the jury, the Supreme Court has never held that a criminal defendant has a constitutional right to have the jury

10

provided with written jury instructions when the jury has already been provided verbal jury instructions.  See United States v. Jones, 353 F.3d 816, 819 (9th Cir. 2003) ("[w]hile providing the jury with written instructions has become increasingly common in the past decades, it is not automatically required"); Turner v. Diaz, 2021 U.S. Dist. LEXIS 113989, at *35-*36 (C.D. Cal. April 1, 2021) ("Neither the United States Supreme Court nor we have ever held that oral jury instructions are ineffectual unless augmented by written copies of the same instructions[.]") (citation omitted).

Therefore, the state court's rejection of this claim could not have been contrary to or involved an unreasonable application of clearly established Supreme Court law and habeas relief is denied on this claim.  Brewer v. Hall, 378 F.3d 952, 955 (9th Cir. 2004) ("If no Supreme Court precedent creates clearly established federal law relating to the legal issue the habeas petitioner raised in state court, the state court's decision cannot be contrary to or an unreasonable application of clearly established federal law."); Wright v. Van Patten, 552 U.S. 120, 126 (2008) (per curiam) ("Because our cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonabl[y] appli[ed] clearly established Federal law." (internal quotation marks and citation omitted)).

### 3.     Ground 1(c): The trial court's instruction on robbery failed to specify Petitioner's culpability for the crime

Petitioner claims that the written jury instructions do not include the culpability required to convict Petitioner of robbery under Cal. Penal Code § 211.  ECF No. 18, SAP at 5.  Petitioner's claim is not supported by the record.

The trial court instructed the jury as follows with respect to the "Culpability For Crime" (CALJIC No. 3.31) of robbery:

> In the crimes charged in counts 1 and 2, namely, robbery in the second degree and petty theft, which is a lesser crime thereto, there must exist a union or joint operation of act or conduct and a certain

specific intent in the mind of the perpetrator.  Unless this specific intent exists, the crime to which it relates is not committed.  [π]  The specific intent required is included in the definitions of the crimes set forth elsewhere in these instructions.

ECF No. 28-6, 3 RT at 639; ECF No. 28-1, 1 CT at 89.

The jury was also instructed on the specific intent for robbery under CALJIC No. 9.40.2:

To constitute the crime of robbery, the perpetrator must have formed the specific intent to permanently deprive an owner of his or her property before or at the time that the act of taking the property occurred.  [π]  If this intent was not formed until after the property was taken from the person, or [in the] immediate presence of the victim, the crime of robbery has not been committed.

ECF No. 28-6, 3 RT at 641; ECF No. 28-1, 1 CT at 90.

Thus, the record reflects that the jury was instructed on the culpability required to convict Petitioner of robbery and habeas relief is denied on this claim.

### 4.   Ground 1(d): Petitioner was actually convicted of second-degree robbery under Cal. Penal Code § 212.5

Petitioner contends he was charged with violating Cal. Penal Code § 211 but was convicted of violating Cal. Penal Code § 212.5.  ECF No. 18, SAP at 5. Petitioner provides no evidence in support of this claim, and it is in fact contradicted by the record.

The court clerk read the verdicts allowed, as set forth above in the Court's analysis of Ground 1(a), and those verdicts reflected two convictions of Cal. Penal Code § 211.  ECF No. 28-6, 3 RT at 699.  The jurors were polled as to whether those verdicts were correct and all jurors answered yes.  Id. at 700-701.  The verdict forms in the Clerk's Transcript also reflect convictions under Cal. Penal Code § 211, ECF No. 28-1, 1 CT at 95-96, and the trial court sentenced Petitioner for convictions of robbery under Cal. Penal Code § 211.  ECF No. 28-6, 3 RT at 917-918; ECF No. 28-1, 1 CT at 131.  As the record wholly contradicts Petitioner's allegations, habeas relief is denied on this claim.

1     **B.     Habeas Relief Is Not Warranted With Respect To Petitioner's**
2           **Claim That He Was Denied A Fair Trial (Ground Two).**

3           In Ground Two, Petitioner makes several allegations in support of his claim

4     that he was denied a fair trial: (a) counsel was not given adequate time to prepare

5     for trial; (b) the trial court improperly held a lengthy discussion regarding

6     evidentiary issues with the attorneys in front of victim Emily Sanchez, and (c) the

7     trial court failed to rule on a moral turpitude issue involving victim Enrique

8     Enriquez.

9           **1.     Ground 2(a): counsel was not given adequate time to**
10                **prepare for trial**

11          In Ground 2(a), Petitioner claims that he was denied a fair trial because

12    defense counsel was not given adequate time to prepare for trial.  ECF No. 18,

13    SAP at 5-6.

14          The state court record reflects that on November 27, 2018, Petitioner's

15    attorney (Deputy Public Defender Omid Haghighat) advised the trial court that he

16    was not available for trial on November 29, 2018.  ECF No. 28-1, 1 CT at 75.

17    Petitioner refused to waive time for his trial to start and the case was sent to the

18    department that assigns a trial court.  Id.  On November 29, 2018, Petitioner was

19    represented by Deputy Public Defender Michael J. King, who, along with the

20    prosecutor, announced "ready" for trial.  Id. at 76.

21          The same day, before the trial court, Petitioner stated, "in order for me to

22    receive a fair trial, which is guaranteed to me under the Constitution, he has to be

23    given adequate time to study the case.  In order for him to do that, I have to waive

24    my constitutional right to a fair and speedy trial . . . ."  ECF No. 28-5, 2 RT at 6.

25    Petitioner then requested that the trial court dismiss his case on those grounds,

26    among others.  Id.  The trial court denied the motion and the trial proceeded.  Id.

27          There is no evidence before this Court (and none before the state court) that

28    Petitioner's counsel was not prepared for trial.  While it is unclear exactly when

13

1  Petitioner's counsel was appointed, it is clear that he felt he had adequate time to

2  prepare for this relatively straight-forward case involving a single incident and

3  only two state witnesses.  Trial counsel himself did not state that he was

4  unprepared for trial at any time before trial commenced, nor did he request a

5  continuance.  Rather, he announced "ready" for trial.  On this record, there is

6  simply no basis for finding that the rejection of this claim ran afoul of the AEDPA.

7  Habeas relief is therefore denied on this claim.

8         **2.**       **Ground 2(b): the trial court improperly held a lengthy**

9                       **discussion regarding evidentiary issues with the attorneys in**

10                       **front of victim Emily Sanchez**

11        Petitioner contends that he was denied a fair trial because the trial court

12  engaged in a lengthy conversation involving "eviden[t]iary factors" in the presence

13  of Count 1 victim Emily Sanchez.  ECF No. 18, SAP at 6.

14                 a.     <u>Proceedings in the trial court</u>

15        During Sanchez's testimony at trial, the trial court took a break at Sanchez's

16  request.  ECF No. 28-5, 2 RT 353-54.  The trial court dismissed the jury for several

17  minutes.  <u>Id.</u> at 354.  Sanchez stepped outside to use the restroom.  <u>Id.</u>  Off the

18  record, the trial court and counsel held a discussion regarding § 1101(b) evidence,[3]

19  which the trial court found admissible.  <u>Id.</u> at 355.  The trial court then advised

20  defense counsel that he had misstated the law on the intent required for robbery in

21  his opening statement.  <u>Id.</u> at 355-356.  A discussion ensued about the § 1101(b)

22  evidence and counsel's thoughts on the intent required for robbery.  Counsel first

23  argued that there was inadequate notice given of the prosecution's intent to use

24  § 1101(b) evidence and that he had inadequate time to investigate whether he can

25  rebut the evidence.  <u>Id.</u> at 356-357.  Counsel and the trial court then engaged in a

26

27

28

---

[3] Cal. Evid. Code § 1101(b) addresses the admissibility of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact other than his or her disposition to commit such an act.

14

1   discussion regarding the "intent" required under robbery.  Counsel argued that the
2   use of fear has to be related to the intent to deprive; that the fear is directly related
3   to taking the property.  Id. at 357-358.  As the discussion continued, counsel
4   interrupted the trial court, stating: "Your Honor, I'm sorry to interrupt, but this is
5   all in front of the witness, so actually I would request to argue this not in front of
6   this witness, because this may be paramount to her testimony as well."  Id. at 358.
7   The trial court stated, "all right.  Well, then we will do it later."  Id.

8                                    b.      Analysis

9          Although it is unclear when exactly witness Sanchez returned to the
10  courtroom, it is clear that she was present for at least part of the discussion that
11  occurred between the trial court and counsel.  In any event, it is pure speculation
12  on Petitioner's part that Sanchez's presence during part of the discussion between
13  the trial court and counsel had any effect whatsoever on the trial.  Petitioner does
14  not allege or prove that Sanchez's testimony was somehow different (exaggerated,
15  perjured, "not the whole truth," etc.) because of what she might have overheard.
16  Nor was Sanchez—a witness (not a juror)—directly involved in deciding
17  Petitioner's guilt of the crimes; thus, her overhearing a discussion regarding the
18  intent required for robbery could not have impacted the deliberations or the verdict.
19  There is simply no evidence that Sanchez's presence for part of the discussion—
20  assuming she overhead *anything*—had any effect on the trial.  In any event, the
21  Court concurs with Respondent that there is no clearly established Supreme Court
22  law finding that this scenario violates the Constitution.  As such, the state court's
23  rejection of this claim could not have been contrary to or have involved an
24  unreasonable application of clearly established Supreme Court law and habeas
25  relief is denied on this claim.
26  / / /
27  / / /
28  / / /

3. **Ground 2(c): the trial court failed to rule on a moral turpitude issue involving victim Enrique Enriquez**

In Ground 2(c), Petitioner contends that he was denied a fair trial because the trial court failed to rule on a moral turpitude issue involving the victim, Enrique Enriquez, in count two.  ECF No. 18, SAP at 6.

a. <u>The record below</u>

After the jury was empaneled but before the commencement of trial, defense counsel requested that he be permitted to impeach Enriquez with a prior misdemeanor conviction for battery.  ECF No. 28-5, 2 RT at 33-34.  The trial court responded that it believed battery was a crime of moral turpitude, but indicated it would look it up, and further, that the conviction did not seem to have been too remote in time.  <u>Id.</u>  The trial court indicated that it would "get back to" defense counsel on whether the witness could be impeached with the battery conviction, and that if it is a crime of moral turpitude, he would allow defense counsel to use it at trial.  <u>Id.</u> at 35.  The trial court indicated it would address the issue the following Monday.  <u>Id.</u> at 36.

There was no further discussion regarding the matter the following Monday, ECF No. 28-5, 2 RT at 301-319, and Enriquez was never questioned about the battery.  <u>Id.</u> at 391-410, 425-458.  As Respondent points out, the record is silent as to whether a ruling may have been issued off the record.  ECF No. 27, Answer Mem. at 12 n.6.

b. <u>Analysis</u>

Challenges to a state trial court's evidentiary rulings are not cognizable on federal habeas review unless the admission or exclusion of evidence violated a defendant's due process right to a fair trial.  <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991).  Petitioner has failed to show that the exclusion of this misdemeanor battery conviction had any effect on the trial, let alone that it denied him a fair trial.  Further, the Supreme Court has expressly found that, no decision of the Court

clearly establishes that the exclusion of extrinsic evidence to impeach a witness's credibility for reasons such as the unfair embarrassment of the victim, surprise to the prosecution, or unduly prolonging the trial, violates the Constitution.  <u>Nevada v. Jackson</u>, 569 U.S. 505, 511 (2013); <u>see also</u> <u>Brown v. Horell</u>, 644 F.3d 969, 983 (9th Cir. 2011) ("[T]he Supreme Court has not decided any case either 'squarely address[ing]' the discretionary exclusion of evidence and the right to present a complete defense or 'establish[ing] a controlling legal standard' for evaluating such exclusions.")

Additionally, this Court has found no Supreme Court holding to the effect that the exclusion of extrinsic evidence to impeach a witness's credibility because the trial court ultimately failed to rule on the issue *and defense counsel failed to bring the issue up again*—assuming that is what happened here—violates the Constitution.  Again, where there is no clearly established Supreme Court law on the issue, the state court's rejection of the claim could not have been contrary to or involved an unreasonable application of clearly established Supreme Court law.  Therefore, habeas relief is denied on this claim.

**C.**   **<u>Habeas Relief Is Not Warranted With Respect To Petitioner's Prosecutorial Misconduct Claims (Ground Three).</u>**

In Ground Three, Petitioner contends that the prosecutor committed error in the following respects: (a) misstating the testimony of a witness regarding the EBT card; (b) impugning defense counsel's integrity; and (c) improperly appealing to the jurors' passions and sympathy.  ECF No. 18, SAP at 6, 8.

**1.**    **Applicable Federal Law**

Federal habeas review of prosecutorial misconduct claims is limited to the narrow issue of whether the alleged misconduct violated due process.  <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 642-43 (1974); <u>Thompson v. Borg</u>, 74 F.3d 1571, 1576 (9th Cir. 1996) (citation omitted).  Misconduct is reviewed in light of the entire trial record, and relief will be granted only if the misconduct by itself

1    infected the trial with unfairness.  Donnelly, 416 U.S. at 639-643; see also Darden

2    v. Wainwright, 477 U.S. 168, 182-83 (1986).

3          The same standard applies to a habeas claim based on prosecutorial

4    misconduct arising from improper argument.  Greer v. Miller, 483 U.S. 756, 765-

5    66 (1987); Darden, 477 U.S. at 181-83; Tak Sun Tan v. Runnels, 413 F.3d 1101,

6    1112 (9th Cir. 2005) ("[U]nder Darden, the first issue is whether the prosecutor's

7    remarks were improper and, if so, whether they infected the trial with

8    unfairness.").  "It 'is not enough that the prosecutors' remarks were undesirable or

9    even universally condemned.'"  Allen v. Woodford, 395 F.3d 979, 997 (9th Cir.

10   2005) (as amended) (internal quotations and citations omitted); see also Hein v.

11   Sullivan, 601 F.3d 897, 912-913 (9th Cir. 2010) ("In determining whether a

12   comment rendered a trial constitutionally unfair, factors we may consider are

13   whether the comment misstated the evidence, whether the judge admonished the

14   jury to disregard the comment, whether the comment was invited by defense

15   counsel in its summation, whether defense counsel had an adequate opportunity to

16   rebut the comment, the prominence of the comment in the context of the entire trial

17   and the weight of the evidence.), cert. denied, 563 U.S. 935 (2011).

18                     **2.     Petitioner's Claims**

19                           a.     Ground 3(a): misstating the testimony of a witness

20                                  regarding the EBT card

21                                       (i)     Petitioner's argument

22         Petitioner contends that the prosecutor misstated the testimony of a witness

23   when the prosecutor stated, "if the argument is he was just looking for a card you

24   would have heard evidence of that."  ECF No. 18, SAP at 6.  Citing the testimony

25   of both prosecution witnesses, Petitioner claims that there *was* evidence that

26   Petitioner was searching for his EBT card during the incident.  Id.

27         On direct appeal, Petitioner argued that the prosecutor developed two

28   "themes" to try to convince the jury that Petitioner was guilty: (1) Petitioner's

requests for help finding his EBT card were a ruse and (2) a guilty verdict would protect the jurors and public safety.  ECF No. 28-7, AOB at 22.  Petitioner contended that the prosecutor asked the jury to consider whether Petitioner was simply looking for help or whether he was looking to get away with a hundred bucks, and he urged them to find that his requests for help were a ruse—part of a premeditated plan to steal the $100 bill.  Id.  The prosecutor, Petitioner argued, told the jury that one of the "biggest problems" with the case was the fact that the only person saying that it was an EBT card was the defense, and that there was not "one iota" of evidence that this was a food stamps card.  Id. at 24 (citing 3 RT at 674).  The prosecutor argued, per Petitioner, that the testimony was only that "a card" was missing—which, the prosecutor argued, could have been a debit card, a credit card, or "anything."  Id. (citing 3 RT at 674).  The prosecutor argued that the defense theory was not credible because the defense had failed to prove that Petitioner had actually obtained an EBT card.  Id.  Defense counsel objected to the prosecutor's argument as improper and "burden shifting," and the trial court overruled the objections.  Id. (citing 3 RT at 652-653).

Petitioner argued on appeal that the prosecutor erroneously shifted the burden of proof to the defense by urging the jury to find Petitioner guilty because the defense had failed to prove he had an EBT card, and further argued that the prosecutor misstated the evidence by claiming that no evidence showed Petitioner said the card he wanted help finding was an EBT card.  ECF No. 28-7, AOB at 27.[4]

(ii)     California Court of Appeal Opinion

The California Court of Appeal rejected Petitioner's claim that the prosecutor misstated the evidence.  It found that the transcript of the 911 call confirmed that Petitioner never specified the type of card he had lost and that he repeatedly said, "[f]ind my card" or "[f]ind my fucking card" but never said "find

---

[4] In the SAP, Petitioner does not appear to argue that the prosecutor engaged in burden shifting but rather focuses on the alleged misstatement of the evidence.

my EBT card."  ECF No. 8-1, Cal. CoA Op. at 11.  It then rejected Petitioner's claim that Enriquez repeatedly stated on cross-examination that the card was an EBT card and that he "specifically testified" that Petitioner asked for his EBT card.  Id.  It found that the exchange on direct exam proceeded as follows:

> Q:  He was asking for a card?  Did he say what kind of card?
> A:  I believe *it was going to be like* an EBT card.
> Q:  And what kind of *words* was he using, *specifically?*  If you can recall . . . .
> A:  He was shouting, "I want my fucking card."

Id. (italics added in Court of Appeal opinion).

The court of appeal did not agree with Petitioner that Enriquez "specifically testified" Petitioner was looking for an EBT card; rather, it interpreted his testimony to reflect that Enriquez later learned or was told Petitioner was referring to his EBT card.  Id.  It found that when Enriquez was asked to repeat the words Petitioner had "specifically" used, he confirmed that Petitioner had not specified it was an EBT card.

(iii)   Analysis

The Court concurs with the California Court of Appeal's findings regarding Enriquez's testimony.  Enriquez did not testify that Petitioner used the word "EBT"; rather, his testimony reflected his *belief* that Petitioner was referring to an EBT card.  Enriquez's *belief* is not testimony to a fact.  The Court has no basis for finding that the trial court and the court of appeal's finding that the prosecutor did not misstate Enriquez's testimony was erroneous.

Petitioner also argued on direct appeal and argues in the SAP that Emily Sanchez testified that Petitioner was looking for his EBT card.  ECF No. 18, SAP at 6.  Petitioner admitted on appeal that her testimony on this point was inconsistent.  ECF No. 28-7, AOB at 31, 31 n.9.

The record reflects the following testimony by Sanchez relevant to this issue, on direct exam:

1         Q: When did you first notice Mr. Dunston? –  at what point?

2         A:  When I saw him in front of me – in front of the register.
     Q:  Did he say anything to you?

3         A:  "I can't find my card."

4    ECF No. 28-5, 2 RT at 345.

5         Q:  To this point have you heard him shout: "Help me. I lost my EBT

6         card[?"]  Or ask anyone for help at this point?
     A: I don't remember.

7    Id. at 350.

8         Q:  Did you hear him come up to you and ask you for help before this?

9         A:  He did ask, "Where's my card?"

10   Id. at 350-351.

11        Q:  Is he saying anything to you at this point?

12        A: "Fuck that.  I can't find my card."
     Q:  He kept saying, "I can't find my card?"

13        A:  Hmm-mm.

14   Id. at 352.

15       On cross-examination, the following questioning took place on the issue of

16   the EBT card:

17        Q: At some point Mr. Dunston said that he didn't give a fuck about

18        the hundred-dollar bill; he wanted to find his EBT card?
     A:  He didn't tell me that.

19        Q:  Do you remember him saying that?

20        A:  Yes.

21   Id. at 378.

22       The California Court of Appeal did not refer to Sanchez's testimony in its

23   denial of this claim.  However, the Court finds that its denial of the claim is

24   nonetheless supported because, in this Court's assessment, the prosecutor did not

25   misstate the testimony regarding the EBT card insofar as Emily Sanchez was

26   concerned.[5]  Sanchez gave no specific testimony herself that Petitioner was trying

27

28       [5] Richter, 562 U.S. at 102 (holding that the reviewing court "must determine what arguments or theories supported or . . . could have supported[] the state court's decision" and must ask

21

to find his *EBT* card.  Every time she quoted Petitioner, she stated that he was looking for his "card."  Counsel's question on cross-examination that elicited a "yes" response from Sanchez was a general question—not a quotation—about Petitioner's state of mind: "At some point, [Petitioner] said that he didn't give a fuck about the hundred-dollar bill; he wanted to find his EBT card?"  ECF No. 28-5, 2 RT at 378.  To that, she responded that he did not tell her that.  Id.  When asked if she remembered him saying that, she said "yes."  Id.  It is not clear to the Court that Sanchez was responding "yes" to Petitioner wanting to find his **EBT** card as opposed to her confirming the idea that he did not care about the hundred dollars but was focused on finding his "card."

In any event, the Court has no basis for finding that the prosecutor's argument regarding the lack of evidence that Petitioner was looking for his EBT card rendered the trial fundamentally unfair.  The jury heard the evidence itself and could discern whether either witness testified that Petitioner was searching for his EBT card.  Further, defense counsel had an opportunity, and did, argue in closing that the evidence showed Petitioner was looking for his EBT card and had no intent to permanently deprive the store of the $100 but was rather using it to "negotiate" for help finding his card.  ECF No. 28-6, 3 RT at 671.

Finally, the evidence against Petitioner was strong.  The testimony showed that he grabbed a $100 bill that was lying on top of the cash register drawer; that Sanchez and her coworker asked him to return the money, and that he responded, "No.  Fuck that."  ECF No. 28-5, 2 RT at 351-53, 360.  Petitioner got in front of the coworker, shouting and "making himself seem bigger," and cursed and shouted at the store supervisor (Enriquez) when asked to return the money.  Id. at 365, 400-402, 407-08, 447.  Sanchez and Enriquez also testified to their fear during the incident, id. at 389, 406, 447, and that Petitioner left the store without returning the

---

"whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with" existing Supreme Court precedent).

money.  Id. at 370, 407.  On this record, the Court cannot find that the prosecutor's argument, even if it did misstate the evidence, amounted to a constitutional violation and habeas relief is denied on this claim.

> b.  Ground 3(b): impugning defense counsel's integrity

In Ground 3(b), Petitioner contends that the prosecutor impugned defense counsel's integrity by arguing that defense counsel fabricated a sham defense as a ploy to gain the jury's sympathy.  ECF No. 18, SAP at 8.

> (i)   The Record Below

During closing argument, the prosecutor argued:

> One of the biggest problems I have with this case is also the card issue.  [ . . . ]  Go listen to that 9-1-1 call.  The only person that is saying it's an EBT card is the defense, the defense attorney.  He never says, "My EBT card" or "my food stamps."  This is a ploy to try to gain sympathy.  Just as it's a ruse to try to distract so he can grab money from a register.  Anything to make you feel sympathetic.  That's a good defense attorney's job, and Mr. King is a great defense attorney.  [π] There is no evidence that this was a food stamps card.  Not one iota.

ECF No. 28-5, 3 RT at 674.

Defense counsel objected on the grounds that the argument misstated the evidence.  Id.  The trial court overruled the objection.

> (ii)   California Court of Appeal Opinion

The California Court of Appeal rejected this claim on direct review, finding that the claim had been forfeited because defense counsel failed to object to the argument on the basis that the prosecutor's argument amounted to impugning defense counsel.  ECF No. 8-1, Cal. CoA Op. at 12.  The court of appeal also found that defense counsel did not seek a curative admonition at the time of the alleged misconduct.  Id.  The court of appeal went on to find that the prosecutor did not commit error in making the argument.  It reasoned: "[T]he prosecutor's remark that defense counsel was the 'only person . . . saying it's an EBT card' was true, as [Petitioner] himself was never heard calling his card an EBT card."  Id. at

13.  The court of appeal found that rather than accusing defense counsel of fabricating a defense or attacking counsel's integrity, he was permissibly criticizing defense counsel's argument.  Id.  Because the court of appeal found no error, it declined to consider Petitioner's contention that counsel had performed ineffectively in failing to object.  Id.

(iii)   Analysis

(a)   <em><u>Procedural Default</u></em>

Respondent contends that this claim is procedurally defaulted based on the California Court of Appeal's finding that Petitioner forfeited the argument by failing to object on the same ground at trial.  ECF No. 27, Answer Mem. at 21.

In order for a claim to be procedurally defaulted for federal habeas corpus purposes, the opinion of the last state court rendering a judgment in the case must "clearly and expressly" indicate that its judgment rests on a state procedural bar.  See Harris v. Reed, 489 U.S. 255, 263 (1989) (citation omitted); see also Coleman v. Thompson, 501 U.S. 722, 729-35 (1991), modified by Martinez v. Ryan, 566 U.S. 1, 14-17 (2012).  "If the intermediate appellate court judgment rests on procedural default and the state supreme court denies review without explanation, the federal courts will consider the claim procedurally defaulted."  Thomas v. Goldsmith, 979 F.2d 746, 749 (9th Cir. 1992), abrogated in part on other grounds by D.A.'s Office v. Osborne, 557 U.S. 52, 68 (2009).  Further, "the application of the state procedural rule must provide 'an adequate and independent state law basis' on which the state court can deny relief."  Park v. California, 202 F.3d 1146, 1151 (9th Cir. 2000) (citation omitted).  To be adequate, a state law ground dismissing a habeas petition must be "regularly and consistently applied."  Bennett v. Mueller, 322 F.3d 573, 585-86 (9th Cir. 2003) (as amended).  "For a state procedural rule to be 'independent,' the state law ground for decision must not be 'interwoven with the federal law.'"  Park, 202 F.3d at 1152.

/ / /

24

In <u>Bennett</u>, 322 F.3d at 586, the Ninth Circuit held that, "[o]nce the state has adequately pled the existence of an independent and adequate state procedural ground as an affirmative defense, the burden to place that defense in issue shifts to the petitioner."  A petitioner could satisfy this burden "by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule."  <u>Id.</u>  Once the petitioner has placed a procedural rule in issue, "the ultimate burden of proving the adequacy of the [] state bar is upon the [s]tate."  <u>See id.</u> at 585-86.

Under California law, the failure to interpose a specific and timely objection in the trial court on the ground advanced for review independently serves as a procedural bar to consideration of the issue by the appellate courts.  <u>See</u>, <u>e.g.</u>, <u>People v. Alvarez</u>, 14 Cal. 4th 155, 186 (Cal. 1996) (failure to object to admission of evidence); <u>People v. Cleveland</u>, 32 Cal. 4th 704, 736 (Cal. 2004) (failure to object to comment made by prospective juror); <u>People v. Saunders</u>, 5 Cal. 4th 580, 590 (Cal. 1993) (failure to object to discharge of jury before it had determined the truth of the alleged prior convictions).  It appears that the California Court of Appeal clearly and expressly invoked the foregoing procedural bar when it concluded that Petitioner had forfeited the issue by failing to object to the argument on the basis asserted on appeal.  The Ninth Circuit has held that this rule has been consistently applied when a party has failed to make *any* objection to the admission of the evidence.  <u>Melendez v. Pliler</u>, 288 F.3d 1120, 1125 (9th Cir. 2002) (citation omitted).  Here, Petitioner's counsel *did* object to the argument he now challenges, though the objection was not on the basis asserted here.  Petitioner, however, makes no "specific factual allegations that demonstrate the inadequacy of the state procedure."  <u>Bennett</u>, 322 F.3d at 586.

The failure to comply with a state's procedural rule results in a default that bars federal consideration of the issue unless the petitioner can demonstrate both

/ / /

1    "cause" for the default and actual "prejudice" as a result of the alleged violation of

2    federal law.  Coleman v. Thompson, 501 U.S. 722, 750-51 (1991).

3          In Murray v. Carrier, the Supreme Court stated that "constitutionally

4    ineffective assistance of counsel . . . is cause for a procedural default."  477 U.S.

5    478, 488 (1986); see also Bonin v. Calderon, 77 F.3d 1155, 1158 (9th Cir. 1996).

6    However, the Supreme Court also stated that "[a]ttorney error short of ineffective

7    assistance of counsel does not constitute cause for a procedural default."  Murray,

8    477 U.S. at 492; see also Cooper v. Neven, 641 F.3d 322, 327 (9th Cir. 2011) ("An

9    objective factor outside of a petitioner's control (e.g., ineffective assistance of

10   counsel or a basis for the claim that was previously unavailable) could constitute

11   cause."); Bonin, 77 F.3d at 1158 ("counsel's ineffectiveness will constitute cause

12   only if it amounts to an 'independent constitutional violation'").  The Supreme

13   Court has also stated that a claim of ineffective assistance of counsel must be

14   presented to the state courts as an independent claim before it may be used to

15   establish cause for a procedural default, see Murray, 477 U.S. at 489, and must not

16   itself be procedurally defaulted.  See Edwards v. Carpenter, 529 U.S. 446, 450-454

17   (2000).

18         In Ground Four of the SAP, Petitioner claims that defense counsel was

19   ineffective in failing to object to the prosecutor's argument on the ground that he

20   was impugning defense counsel's integrity.  ECF No. 18, SAP at 6; ECF No. 8-3.

21   This ineffective assistance of counsel claim was alleged (and summarily denied) in

22   the Petition for Review to the California Supreme Court.  ECF No. 8-2, Petition for

23   Review at 36-37.   The Court need not decide this procedural default issue in the

24   interests of judicial economy where, as here, the procedural default issue is

25   complex—and would require the Court to assess the merits of the claim to decide

26   the ineffective assistance of counsel argument in any event—and the claim clearly

27   fails on its merits.  See Lambrix v. Singletary, 520 U.S. 518, 525 (1997).

28   / / /

1

(b)     _The merits_

2

1)     _Prosecutorial Misconduct_

3     The Court concurs with the court of appeal that the prosecutor did not

4     commit error or impugn defense counsel's integrity, and that instead, he was

5     permissibly commenting on the lack of evidence that Petitioner was searching for

6     his _EBT_ card.  The Court has reviewed the record and neither prosecution witness

7     quoted Petitioner as having asked for help looking for his EBT card; rather, it was

8     stated that Petitioner was looking for his (unspecified) "card."  The prosecutor's

9     comment that this was the defense attorney's ploy to gain sympathy was not

10     improper, let alone an argument that infected the trial with unfairness.  That

11     Petitioner might have panicked if he lost his EBT card—also known as food

12     stamps—did present him in a more favorable and sympathetic light to the jury, and

13     might have lent credence to the defense position that he was, in an act of

14     desperation, using the $100 bill to "negotiate" for help finding his EBT card.

15     Notably, though, the prosecutor was not incorrect in stating that there was _no_

16     _evidence_ that Petitioner even had an EBT card, let alone that that was the card he

17     lost.  Prosecutors are generally given "wide latitude" in making closing arguments.

18     See United States v. Wilkes, 662 F.3d 524, 538 (9th Cir. 2011).  Moreover, they

19     have considerable leeway to strike "hard blows" based on the evidence and all

20     reasonable inferences that may be drawn from the evidence. See United States v.

21     Henderson, 241 F.3d 638, 652 (9th Cir. 2000) (citing Berger v. United States, 295

22     U.S. 78, 88 (1935)).  Finally, the jury was instructed that statements made by the

23     attorneys during trial are not evidence.  ECF No. 28-1, 1 CT at 85.  Jurors are

24     presumed to have followed the instructions given to them.  Weeks v. Angelone,

25     528 U.S. 225, 234 (2000), and there is no evidence they failed to do that here.  The

26     prosecutor did not commit misconduct (or error).

27     / / /

28     / / /

27

1                            *2)*        *Ineffective Assistance of Counsel*

2        The Sixth Amendment right to counsel guarantees not only assistance, but

3 effective assistance, of counsel.  See <u>Strickland v. Washington</u>, 466 U.S. 668

4 (1984).  In order to prevail on a claim of ineffective assistance of counsel,

5 Petitioner must establish two things: (1) counsel's performance fell below an

6 "objective standard of reasonableness" under prevailing professional norms; and

7 (2) the deficient performance prejudiced the defense, i.e., "there is a reasonable

8 probability that, but for counsel's unprofessional errors, the result of the

9 proceeding would have been different."  <u>Id.</u> at 687-88, 694.  A claim of ineffective

10 assistance must be rejected upon finding either that counsel's performance was

11 reasonable or that the alleged error was not prejudicial.  <u>Id.</u> at 697; <u>see also</u> <u>Rios v.</u>

12 <u>Rocha</u>, 299 F.3d 796, 805 (9th Cir. 2002) ("Failure to satisfy either prong of the

13 <u>Strickland</u> test obviates the need to consider the other.").

14        "The inquiry under <u>Strickland</u> is highly deferential and 'every effort [must]

15 be made to eliminate the distorting effects of hindsight, to reconstruct the

16 circumstances of counsel's challenged conduct, and to evaluate the conduct from

17 counsel's perspective at the time.'"  <u>Greenway v. Schriro</u>, 653 F.3d 790, 802 (9th

18 Cir. 2011) (quoting <u>Strickland</u>, 466 U.S. at 689).

19        Precisely because the Court has found no prosecutorial misconduct based on

20 impugning defense counsel, defense counsel could not have been ineffective in

21 failing to object on this basis.  <u>James v. Borg</u>, 24 F.3d 20, 27 (9th Cir. 1994)

22 (failure to make a futile motion does not constitute ineffective assistance of

23 counsel).

24                  c.     <u>Ground 3(c): improperly appealing to the jurors' passions</u>

25                      <u>and sympathy</u>

26        In Ground 3(c), Petitioner argues that the prosecutor improperly appealed to

27 the jurors' passions and sympathy by urging them to convict Petitioner to protect

28 themselves, their family members, and public safety.  ECF No. 18, SAP at 8.  As

part of Ground Four, Petitioner argues that defense counsel was ineffective in failing to object to the prosecutor's appeals to irrelevant considerations, and the passions and prejudices of the jurors. Id. at 6, 9.

(i)     The Record Below

During closing argument, the prosecutor stated the following:

> If you're paying attention to the news at all, what just happened at Walgreens?  This is what these statutes are for, because the moment people become engaged in conflict about stupid things involving property, pride, ego, someone wanting to be a hero jumps in and someone's potential for harm escalates significantly.  And what [Petitioner] did on September 5, 2018 . . . did just that; he put everyone at risk there by his actions.  And that is why it matters.
>
> Maybe you're thinking here, you're going, 'man we spent three days talking about something where no one got shot or stabbed; what's the big deal?'  It matters because people should not have to be in danger for something like a hundred bucks, whether it's the defendant's life, a clerk's life, or the patrons at that store.  It shouldn't be that way.  You should be safe in your environment where you go to work or where you go shop.  That's why we have these statutes.
>
> [π]
>
> [T]hese are the places you go shop, these are the places maybe family members work of your own, or you work, and how people act matters, because if it turns into escalated conduct, if it turns into something where somebody might get physical . . . ."
>
> [π]
>
> Other than that, take it fairly, read it impartially, decide for yourself if the people in that store matter enough to enforce the statute.  And I promise you, if you're taking the law as it's written and as it's supposed to be applied, this is a robbery, and it's that simple.

ECF No. 28-6, 3 RT at 654-655, 675, 677.

(ii)     California Court of Appeal opinion

On direct appeal, Petitioner argued that the prosecutor committed misconduct by improperly appealing to the jury's sympathy or passion in his closing argument and rebuttal when he argued the jury should protect the community by enforcing the state's robbery statute.  ECF No. 28-7, AOB at 36-38.  Appellate counsel conceded that defense counsel did not object to these incidents

29

1  of misconduct and argued that this failure constituted ineffective assistance of

2  counsel.  Id. at 37 n.11.

3      The California Court of Appeal rejected Petitioner's claim on direct review

4  by finding that, "[t]his was, no doubt, an appeal to irrelevant considerations.  It is

5  not proper to ask the jury to base its decision on whether the 'people in the store

6  matter enough to enforce the statute.'  This borders on inciting the jury against the

7  defendant by asking it to choose who is more important."  ECF No. 8-1, Cal. CoA

8  Op. at 14.  However, the court of appeal declined to exercise its discretion to

9  excuse Petitioner's failure to object, id., and rejected Petitioner's contention that

10  counsel was ineffective in failing to object, finding that it had "no reason to

11  conclude counsel's failure to object[] was anything other than a strategic decision."

12  Id. at 15.

13      The court of appeal reasoned that counsel may have decided against

14  objecting, believing that an objection could have drawn more attention to the

15  prosecutor's remarks, or that an objection that was overruled might have

16  emboldened the prosecutor to take the remarks even further.  Id.  It also found that

17  it was not reasonably probable that Petitioner would have obtained a more

18  favorable verdict but for counsel's failure to object.  Id.  Citing the evidence

19  against Petitioner, it found that "[t]his case was not so closely balanced that

20  counsel's failure to object to the prosecutor's appeal to the jury to protect the

21  public materially affected the verdict."  Id. at 15-16.

22                          (iii)    Analysis

23      Respondent contends that this claim, like Ground 3(b), is procedurally

24  defaulted based on defense counsel's failure to object at trial.  ECF No. 27, Answer

25  Mem. at 24.  Respondent argues that Petitioner has failed to make any of the

26  necessary showings to overcome the default, and that, in any event, he suffered no

27  prejudice, as the court of appeal found.  Id. at 24-25.

28  / / /

The standards for assessing procedural default are set forth previously and the Court finds that this claim is procedurally defaulted as Petitioner made no objection the comments at trial.  However, Petitioner has alleged ineffective assistance of counsel to excuse the procedural default, which the Court will address.

The court of appeal found the prosecutor's comments to be inappropriate. There is no basis for finding, however, that but for the prosecutor's improper comments, there is a reasonable probability that the result of the trial would have been different.  See Rios, 299 F.3d at 805 (9th Cir. 2002) ("Failure to satisfy either prong of the Strickland test obviates the need to consider the other.").  As set forth in this Court's analysis of Ground 3(a), the evidence against Petitioner was strong and straightforward and the facts were simple and the evidence compelling. Petitioner has not shown cause and prejudice to overcome the procedural default of this claim.

## D.   **Habeas Relief Is Not Warranted With Respect To Petitioner's Ineffective Assistance Of Counsel Claims (Ground Four).**

In Ground Four, Petitioner contends that his trial counsel was ineffective for failing to: (a) move for dismissal based on constitutional violations "displayed" during trial; (b) request an instruction on the subjective and objective components of robbery; (c) preserve an instructional error claim; (d) object to prosecutorial errors; (e) request a continuance to prepare for trial; (f) properly argue a writ of mandamus/motion to recuse; (g) request a hearing regarding Petitioner's ability to pay fines and fees; and (h) request a curative admonition of Emily Sanchez after the trial court had a lengthy conversation in front of her.  ECF No. 18, SAP at 6, 9.

### 1.   Analysis

The standard for the effective assistance of counsel is set forth above in the Court's analysis of Petitioner's prosecutorial misconduct claim 3(b).

/ / /

1    Preliminarily, the Court concurs with Respondent that Petitioner has

2  proffered only self-serving, conclusory allegations regarding counsel's allegedly

3  ineffective assistance and has failed to provide any affidavit from his attorney

4  explaining his decisions at trial.  ECF No. 27, Answer Mem. at 27-28; <u>Gentry v.</u>

5  <u>Sinclair</u>, 705 F.3d 884, 900 (9th Cir. 2013) (where habeas petitioner presented

6  affidavit of trial counsel that failed to address particular IAC claim, it was not

7  unreasonable of state supreme court to have concluded counsel's performance was

8  not deficient where there was no evidence to indicate why counsel's conduct was

9  unreasonable under the circumstances); <u>Rice v. Cooper</u>, 148 F.3d 747, 750 (9th

10  Cir. 1998) ("Rice has not sought an affidavit from the lawyer to explain the

11  lawyer's strategy").  On this basis, the Court finds that the claims are conclusory

12  and do not warrant habeas relief.  <u>See</u> <u>Jones v. Gomez</u>, 66 F.3d 199, 204-05 (9th

13  Cir. 1995).  To the extent the Court is able to discern certain of Petitioner's claims

14  and the allegations in support of the claims, the Court finds that the state courts'

15  rejection of these claims was neither contrary to nor involved an unreasonable

16  application of clearly established Supreme Court law, as further explained.

17              a.    <u>Ground 4(a): move for dismissal based on constitutional</u>

18                    <u>violations displayed during trial</u>

19    In Ground 4(a), Petitioner contends that counsel was ineffective in failing to

20  move for a dismissal based on constitutional issues that arose during trial.  As

21  Petitioner has wholly failed to identify what constitutional violations allegedly

22  occurred at trial, or how they supported a motion to dismiss, this claim is rejected

23  as conclusory.  <u>Jones</u>, 66 F.3d at 205 ("[C]onclusory suggestions that [ ] trial . . .

24  counsel provided ineffective assistance fall far short of stating a valid claim of

25  constitutional violation).

26  / / /

27  / / /

28  / / /

32

1               b.     <u>Ground 4(b): request an instruction on the subjective and</u>

2                         <u>objective components of robbery</u>

3       In Ground 4(b), Petitioner contends that counsel was ineffective in failing to

4 request an instruction regarding the subjective and objective components of

5 robbery.  ECF No. 18, SAP at 6.

6       On direct appeal, Petitioner raised a claim alleging that the trial court

7 prejudicially erred by failing to instruct the jury sua sponte on both the subjective

8 and objective components of the "fear" element of robbery.  The court of appeal

9 denied this claim, reasoning that, ". . . no such instruction was necessary.

10 California statute or case law does not require a victim's fear to be objectively

11 reasonable; it only requires that a victim of robbery have actual fear, i.e., subjective

12 in nature."  ECF No. 8-1, Cal. CoA Op. at 17.

13       In light of this finding regarding the state law definition of robbery, by

14 which this Court is bound, <u>Bradshaw v. Richey</u>, 546 U.S. 74, 76 (2006), the Court

15 finds that any request made by counsel to instruct the jury on the subjective and

16 objective components of robbery would have been denied.  The failure to make a

17 futile objection does not constitute ineffective assistance of counsel.  <u>James</u>, 24

18 F.3d at 27.

19               c.     <u>Ground 4(c): preserve an instructional error claim</u>

20       In Ground 4(c), Petitioner contends that counsel failed to preserve an

21 instructional error claim.  ECF No. 18, SAP at 6.  Petitioner has failed to identify

22 the instructional error claim that counsel allegedly failed to preserve.  On this

23 basis, the Court finds that the claim is conclusory and should be denied.  <u>Jones</u>, 66

24 F.3d at 205.  To the extent that Petitioner is alleging that counsel waived the

25 instructional error claim that is the subject of Ground 4(b), the Court's rejection of

26 the claim in Ground 4(b) would also require rejection of the claim alleging

27 ineffective assistance of counsel in failing to preserve that instructional error claim

28 as Petitioner can show neither deficient performance nor prejudice.

1        d.  Ground 4(d): object to prosecutorial errors

2    In Ground 4(d), Petitioner claims that counsel was ineffective in failing to

3 object to the alleged prosecutorial misconduct set forth in Grounds 3(b) and 3(c).

4 ECF No. 18, SAP at 6, 9.  The Court has already addressed and rejected these

5 ineffective assistance of counsel claims in its analysis of Grounds 3(b) and (c).

6        e.  e. Ground 4(e): request a continuance to prepare for trial

7    In Ground 4(e), Petitioner contends that counsel was ineffective in failing to

8 request a continuance to prepare for trial.  ECF No. 18, SAP at 9.  As previously

9 set forth in the Court's analysis of Ground 2(a), there was no evidence that counsel

10 was not prepared for trial, and he in fact announced "ready."  In the absence of

11 evidence that counsel proceeded to trial when he was unprepared to do so and in

12 light of the record showing that counsel announced that he *was* prepared for trial,

13 the Court cannot find that counsel's failure to request a continuance to prepare for

14 trial was deficient.  Further, Petitioner could not have been prejudiced by counsel's

15 failure to request a continuance he did not need.  This claim is denied.

16        f.  Ground 4(f): properly argue a writ of mandamus/motion

17           to recuse

18    In Ground 4(f), Petitioner contends that counsel was ineffective in failing to

19 properly argue "the writ of mandamus/motion to recuse," by arguing only portions

20 of the writ/motion and misconstruing the writ/motion as a motion for retrial.  ECF

21 No. 18, SAP at 9.

22        (i)  The record below

23    Prior to sentencing, Petitioner filed a pro se writ of mandamus/motion to

24 recuse.  ECF No. 28-6, 3 RT at 901-902.  In court, Petitioner gave defense counsel

25 a supplemental brief Petitioner wanted filed.  Id.  When the trial court indicated it

26 had not "do[ne] anything with [the motion that Petitioner had filed]" because

27 Petitioner was not the attorney of record, defense counsel stated that "he" (counsel)

28 was filing the motion then, and that he wanted to "adequately defend" Petitioner,

so he would "accept responsibility for it." Id. at 902-903.  When the trial court heard the motion in court, defense argued that a new trial should be granted based on the fact that the state failed to provide discovery to the defense until after the trial had started, which counsel was unable to review until after the state had rested its case. Id. at 906-907.  Counsel further argued that the 911 call was not adequately transcribed. Id.

The trial court found that the motion was actually a writ of mandamus/motion to recuse and not a motion for a new trial, and that it raised three issues: (1) the judge was biased and should be recused; (2) ineffective assistance of counsel; and (3) prosecutorial misconduct. ECF No. 28-6, 3 RT at 908-910.  The trial court denied the motion. Id.

(ii)    Analysis

The trial court construed the motion that Petitioner filed as a writ of mandamus/motion to recuse and set forth in its oral ruling what it found to be the claims therein.  The trial court indicated that it had read the motion and it expressly found that "there is no support" for the claims.  ECF No. 28-6, 3 RT at 910. Whatever counsel would have argued at the hearing, then, would have made no difference.  Petitioner cannot show that he was prejudiced by counsel's failure to adequately argue the motion, even if the Court were to find that that is what happened. Rios, 299 F.3d at 805 (9th Cir. 2002) ("Failure to satisfy either prong of the Strickland test obviates the need to consider the other.").  Habeas relief is denied on this claim.

g.    Ground 4(g): request an ability to pay hearing regarding<br>the imposition of fines and fees

In Ground 4(g), Petitioner contends that counsel was ineffective in failing to request an ability to pay hearing regarding the imposition of fines and fees, which resulted in the forfeiture of the issue on appeal.  ECF No. 18, SAP at 9.  The Court concurs with Respondent that counsel could have determined that an argument for

35

1   an ability to pay hearing would have been futile.  ECF No. 27, Answer Mem. at 35.

2   At the time of sentencing, $640 in fees were assessed against Petitioner and he was

3   38 years old.  ECF No. 28-1, 1 CT at 128-133.  There is no evidence he was not

4   able-bodied.  As such, Petitioner would have had the ability to pay this fine with

5   prison wages, over time, and the trial court would have so found.  In any event, the

6   Court need not determine counsel's actual reason for making a particular trial

7   decision so long as that decision falls within the range of reasonable representation.

8   See Morris v. California, 966 F.2d 448, 456-57 (9th Cir. 1992).

9        Here, the Court finds that trial counsel's decision to not request an ability to

10  pay hearing was reasonable and habeas relief is denied on this claim.

11              h.    Ground 4(h): request a curative instruction after the trial

12                    court had a lengthy conversation in front of victim

13                    Sanchez

14        In Ground 4(h), Petitioner contends that counsel was ineffective in failing to

15  request a curative admonition of witness Emily Sanchez after trial counsel and the

16  court engaged in a lengthy legal conversation regarding Cal. Penal Code § 211 and

17  other legal factors.  ECF No. 18, SAP at 9.

18        The Court has already set forth the facts underlying this claim in its analysis

19  of Ground 2(b).  As the Court already found, there is no evidence that Sanchez's

20  presence for part of the discussion—assuming Sanchez overhead anything—had

21  any effect on the trial.  Further, counsel was aware that Sanchez was present for at

22  least part of the conversation because counsel was the one who asked to continue it

23  at another time because Sanchez was there.  And yet, counsel deliberately did not

24  seek an admonition of the witness.  Again, this Court need not speculate as to the

25  actual reason why, Morris, 966 F.2d at 456-457, because "[c]ounsel is strongly

26  presumed to have rendered adequate assistance."  Strickland, 466 U.S. at 690.

27  Counsel's decision to not seek an admonition of the witness was reasonable,

28  particularly because counsel was in the best possible position to have assessed

1  whether Sanchez overheard any of the conversation and whether that might have

2  negatively impacted the trial in any way.  Habeas relief is denied on this claim.

3     **E.     Habeas Relief Is Not Warranted With Respect To Petitioner's**

4     **Claim Relating To The Denial Of His Marsden Motion (Ground**

5     **Five).**

6     In Ground Five, Petitioner claims that the trial court erroneously denied his

7  Marsden motion.  ECF No. 18, SAP at 6, 10.[6]

8        **1.    The Record Below**

9     Prior to jury selection, Petitioner made a motion pursuant to People v.

10 Marsden to have counsel substituted.  ECF No. 28-5, 2 RT at A-2-A-3; Schell v.

11 Witek, 218 F.3d 1017, 1021 (9th Cir. 2000) ("[T]he essence of [a Marsden] motion

12 is that appointed counsel's representation has in some significant measure fallen

13 below the level required by the Sixth Amendment.").  During the hearing,

14 Petitioner argued that his counsel had "failed to take notice of certain issues in

15 regard to [his] case," including failing to ask certain questions Petitioner wanted

16 asked of a preliminary hearing witness.  ECF No. 28-3, Sealed Proceedings –

17 Marsden Motion ("Marsden Transcript) at A-4.  Petitioner additionally argued that

18 they have a "complete conflict of interest" but did not explain the conflict.  Id. at

19 A-5.  The trial court denied the Marsden motion.  Id. at A-6.

20       **2.    Applicable Federal Law and Analysis**

21    To the extent that Petitioner is claiming that his rights under Marsden (i.e.,

22 California law) were violated, this claim is not cognizable on federal habeas

23 review.  McGuire, 502 U.S. at 68 ("In conducting habeas review, a federal court is

24

25

26 ───────────────
   [6] Although Petitioner references the "waiver of counsel 'Faretta rights'" in the SAP, he makes no
27 argument that he was denied his constitutional right to represent himself.  ECF No. 18, SAP at
   10.  Rather, his facts are directed to the trial court's failure to allow him to adequately argue his
28 Marsden motion, and the fact that he was then forced to go to trial with an attorney who was not
   prepared.  This latter aspect of the claim has already been addressed by the Court in Ground 2(a).

1  limited to deciding whether a conviction violated the Constitution, laws or treaties
2  of the United States.").

3      Under federal law, the Sixth Amendment guarantees all criminal defendants
4  the right to the assistance of counsel.  <u>Gideon v. Wainwright</u>, 372 U.S. 335, 339
5  (1963).  It does not, however, guarantee a "meaningful relationship" between a
6  client and his attorney.  <u>Morris v. Slappy</u>, 461 U.S. 1, 14 (1983).  A defendant's
7  constitutional rights are violated if an irreconcilable conflict exists that prevents the
8  effective assistance of counsel.  <u>See Stenson v. Lambert</u>, 504 F.3d 873, 886 (9th
9  Cir. 2007).

10     There is no evidence that there was an irreconcilable conflict between
11 Petitioner and his attorney.  Although he claimed during the hearing on the
12 <u>Marsden</u> motion that he and his attorney had a "complete conflict of interest,"
13 when the trial court asked what that conflict was based on, Petitioner's reply was
14 not responsive to the question.  ECF No. 28-3, Marsden Transcript at A-5.  "In
15 order to demonstrate an actual conflict of interest, the defendant must show that his
16 attorney was actively representing conflicting interests and that the conflict
17 adversely affected the attorney's performance."  <u>Stenson</u>, 504 F.3d at 886.  The
18 record shows only that Petitioner believed that his counsel was not taking notice of
19 certain issues and not asking certain questions that Petitioner wanted him to ask at
20 the preliminary hearing.  These types of concerns are "better characterized as
21 [concerns] over trial strategy" and there is "no clearly established Supreme Court
22 precedent holding that this kind of disagreement amounts to an actual conflict of
23 interest."  <u>Id.</u>  Habeas relief is denied on this claim.

24     **F.**    <u>**Habeas Relief Is Not Warranted With Respect To Petitioner's**</u>
25             <u>**Due Process Claim Relating To The State Appellate Court's**</u>
26             <u>**Findings On Appeal.**</u>

27     In Ground Six, Petitioner contends that he suffered due process violations
28 arising from certain findings and conclusions made by the California Court of

1  Appeal on direct appeal relating to his prosecutorial misconduct claims and a

2  cumulative error claim.  ECF No. 18-1, Attachment to SAP ("SAP Att.")  at 1.

3      As an initial matter, the Court finds that a state court's fact-finding and

4  analysis do not, in and of themselves, give rise to a due process violation.  Rather,

5  where the finding and conclusions are contrary to or involve an unreasonable

6  application of clearly established Supreme Court law, the habeas petitioner is

7  entitled to habeas relief on the constitutional violation—not because the state

8  court's flawed analysis itself constitutes the constitutional violation.  For the

9  reasons discussed in greater detail below, habeas relief is denied on this claim.

10  ### 1.      Prosecutorial Misconduct

11      Petitioner takes issue with several of the findings made by the California

12  Court of Appeal relating to his prosecutorial misconduct claims.  ECF No. 18-1,

13  SAP Att. at 1.  The Court has already addressed the California Court of Appeal's

14  rejection of Petitioner's prosecutorial misconduct claims, including his related

15  ineffective assistance of counsel claims, previously, and found that they failed on

16  the merits.

17  ### 2.      Cumulative Error

18      "Cumulative error applies where, 'although no single trial error examined in

19  isolation is sufficiently prejudicial to warrant reversal, the cumulative effect of

20  multiple errors may still prejudice a defendant.'"  Mancuso v. Olivarez, 292 F.3d

21  939, 957 (9th Cir. 2002) (as amended) (quoting United States v. Frederick, 78 F.3d

22  1370, 1381 (9th Cir. 1996)); see also Parle v. Runnels, 505 F.3d 922, 928 (9th Cir.

23  2007) ("[T]he Supreme Court has clearly established that the combined effect of

24  multiple trial errors may give rise to a due process violation if it renders a trial

25  fundamentally unfair, even where each error considered individually would not

26  require reversal.").

27      In the California Court of Appeal and the California Supreme Court,

28  Petitioner argued that the prosecutorial misconduct claims and the instructional

error claim relating to the trial court's failure to instruct with the subjective and objective components of fear in a robbery combined to create a cumulative error. ECF No. 28-7, AOB at 64-65; ECF No. 8-2, Petition for Review at 37-39.  The state courts' rejection of this claim was neither contrary to nor involved an unreasonable application of clearly established Supreme Court law as none of the alleged claims evaluated singularly, or in combination, constitute constitutional error.  Thus, Petitioner's cumulative error claim fails as well.  See Mancuso, 292 F.3d at 957 ("Because there is no single constitutional error in this case, there is nothing to accumulate to a level of a constitutional violation").

## VI.    ORDER

IT THEREFORE IS ORDERED that Judgment be entered denying the Petition and dismissing this action with prejudice.

DATED:  April 8, 2022

HON. SHASHI H. KEWALRAMANI
United States Magistrate Judge